IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TUGBOAT INVESTMENTS LLC, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| BANK OF AMERICA, N.A., *Defendant* | : : : | No. 22-2149 |

## MEMORANDUM

PRATTER, J.                                                                                                                   MARCH ___, 2023

This lawsuit arises out of a scheme perpetrated by two fraudsters who posed as Tugboat Investments LLC and used forged documents to open a Bank of America account in Tugboat's name, sell two of Tugboat's real estate properties for around $350,000, deposit the proceeds into the Bank of America account, and then cash out via cash withdrawals, cashier's check, and debit card purchases. Tugboat is currently engaged in separate quiet title litigation over the fraudulently sold properties, and neither the fraudsters nor the purchasers of those properties are parties to this litigation. Rather, Tugboat brings claims against Bank of America for negligence, conversion, and violations of various sections of the Pennsylvania Commercial Code for allegedly allowing the fraudsters to open an account in Tugboat's name, failing to verify the forged information provided, and facilitating large deposits and withdrawals of money.

The money at issue, however, was paid by the purchasers of the fraudulently sold properties, and then secured by the fraudsters. Though Tugboat may recover from the purchasers and fraudsters for losses caused by the fraudulent sales, it has no legal claim to these funds. And Tugboat does not identify any other injury that can be traced back to Bank of America's alleged conduct. Tugboat thus lacks standing, and the Court grants Bank of America's motion to dismiss.

1

## BACKGROUND[1]

Tugboat Investments LLC is a family-owned company that, in 2018, owned three real estate properties in Philadelphia. In May of 2018, two fraudsters, Kevin Dean and Andrew Myatt, impersonated members of Tugboat and used forged documents to open an account with Bank of America in Tugboat's name. These documents contained obvious discrepancies, including listing the wrong name and number of members of Tugboat, providing a fraudulent EIN number, and lacking the proper stamp from the Department of State. Nonetheless, Bank of America opened the account.

The fraudsters continued to impersonate Tugboat and fraudulently sold two of Tugboat's properties. The proceeds of these sales—approximately $350,000—were deposited into the Bank of America account by wire transfer. Messrs. Dean and Myatt then withdrew these funds from the Bank of America account via cashier's checks, cash withdrawal, and check card purchases. By July 31, 2018, nearly all the funds had been disbursed from the account.

Tugboat is currently engaged in quiet title litigation against the purchasers of the fraudulently sold properties. Those purchasers are not party to this case, however, which Tugboat brings solely against Bank of America to recover money damages to compensate it for losses stemming from the fraudulent sale of its properties.

## LEGAL STANDARD

The party claiming jurisdiction has the burden to show that a federal court has subject matter jurisdiction at all stages of the litigation. *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). "A challenge to subject matter jurisdiction may be raised at any point in the litigation . . . ." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir.

---

[1] These facts are taken from Tugboat's complaint, which the court accepts as true when evaluating a facial attack on jurisdiction. *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

2018). When a defendant questions the court's power to hear a case, the court must first determine whether the challenge is a facial or factual attack. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

A facial attack asserts that the facts alleged in a complaint are "insufficient to invoke subject matter jurisdiction." *Id.* at 358. A court considering a facial attack "must consider the allegations of the complaint as true," similar to the standard for evaluating a Rule 12(b)(6) motion. *Mortenson*, 549 F.2d at 891. A factual attack, in contrast, challenges the factual allegations underlying a plaintiff's assertion of jurisdiction. *Const. Party of Pa.*, 757 F.3d at 358. Unlike with a facial attack, a court may not accept a plaintiff's allegation as true and may consider evidence outside of the pleadings. *Mortenson*, 549 F.2d at 891.

To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (internal quotation marks omitted).

The injury-in-fact element requires a plaintiff to assert "the invasion of a concrete and particularized legally protected interest," *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), meaning one that "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

The causation element requires that a plaintiff's alleged injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560 (alterations in original omitted). The "causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim"—"an indirect causal relationship will suffice." *Toll Bros.*, 555 F.3d at 142.

3

Finally, the redressability element requires that a plaintiff show that it is "likely, as opposed to merely speculative," that their alleged injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

## DISCUSSION

### I. Injury in Fact

The crux of Tugboat's claim is that if Bank of America had exercised better care and prevented the fraudsters from either opening an account in Tugboat's name or withdrawing funds from that account once opened, Tugboat would not have suffered the losses it did. Tugboat is not suing Bank of America to recover the fraudulently sold properties. That is the subject of the separate quiet title litigation. Rather, Tugboat is suing Bank of America over roughly $350,000 in proceeds from the fraudulent sales, along with losses associated with being deprived of the use of the properties, court costs, attorney's fees, and physical damage to the properties.

For Tugboat to show an injury in fact, it must establish that it has suffered an injury to a "legally protected interest." *Lujan*, 504 U.S. at 560. Tugboat, however, has no claim to the proceeds of the fraudulent sales. That money was paid to the fraudsters by the purchasers of the properties, and it is the purchasers, not Tugboat, who would be entitled to recover those funds from the fraudsters. Tugboat, in contrast, would only be entitled to recover from the fraudsters for losses it incurred due to the fraudulent sale. Tugboat contends that it is nonetheless entitled to these funds because they were deposited in an account opened in Tugboat's name. But Tugboat cannot simultaneously argue that it is entitled to both the properties themselves and the proceeds from the illegal sales, and it does not cite any authority for the proposition that it acquired some legally cognizable interest in the funds simply because they were deposited into an account fraudulently

4

made out in its name. Without injury to a legally protected interest, Tugboat lacks standing to sue over the proceeds.

## II. Causation

Tugboat's claims arising from the loss of use of its properties and physical damage are the result of the fraudulent sales themselves. The question, then, is whether the fraudulent sales can be "fairly . . . traced" to Bank of America's alleged conduct. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41 (1976). The causation requirement is "akin to 'but for' causation" in tort, *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 418 (3d Cir. 2013), and may be satisfied by "an indirect causal relationship." *Toll Bros.*, 555 F.3d at 142. It is essential, however, that the injury be traceable *to the defendant's conduct*, rather than the "independent action of some third party not before the court." *Id.* at 137–38.

Tugboat has clearly alleged how its injuries were the result of the fraudsters' conduct. The fraudsters, however, are not before the court—only Bank of America is. And Tugboat fails to allege how Bank of America's conduct caused or led to the fraudulent sales. The complaint states that the fraudsters opened an account in Tugboat's name in May 2018 and that the fraudulent sales were completed in June 2018. But it does not allege how allowing an account to be opened caused the sales to occur; to the contrary, the complaint alleges that the fraudsters deposited the proceeds into the Bank of America account themselves, suggesting the sales had already been completed before the account came to be involved. Tugboat has thus not established that Bank of America's conduct in allowing the fraudsters to open the account was a "but for" cause of the fraudulent sales. Any injury stemming from the loss of Tugboat's properties is not fairly traceable to Bank of America's conduct, and so Tugboat lacks standing to sue Bank of America on these claims.

## CONCLUSION

Tugboat has suffered a serious injury. Due to the conduct of two fraudsters, it was deprived of the possession and use of two of its real estate properties. The proper avenue to recover those properties is the quiet title action currently pending against the purchasers or an action against the fraudsters for incidental losses caused by the fraudulent sales, not an action to recover proceeds to which Tugboat has no entitlement. And to the extent Tugboat has suffered injuries beyond mere loss of the properties, Article III demands that it seek redress from the parties who caused those injuries—that is, the two fraudsters. Because Tugboat cannot trace Bank of America's alleged conduct to any legally cognizable injury, it lacks standing to bring this suit and the Court must dismiss for lack of jurisdiction. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE